In the matter of Da Costa.

---

SUPREME COURT. At Chambers. New York July, 1847. Before *Edwards*, Justice

## In the matter of JOSE DA COSTA and JOSE DA ROCHA.

The adjudication of an officer having power to issue and decide upon a writ of *habeas corpus*, may be set up as *res adjudicata* upon any subsequent writ of *habeas corpus*, and is conclusive upon the same parties, when the subject matter is the same; and there are no new facts.

The parties are the same, where the writ is issued on behalf of the same person, against the same respondent, although the relators are different.

The material facts alleged in the return, which are not denied by the party brought up must be taken to be true.

The circumstances under which this application was made, sufficiently appear in the opinion of the court.

*John Jay* and *J. L. White* for the slaves.

In the matter of Da Costa.

1. The writ of *habeas corpus* is a substantial right, and not the mere shadow of a right. It is a writ *ex debito justicæ*, intended to afford an easy, prompt and efficient remedy for all unlawful imprisonment — a writ to which oll persons are entitled in the most expeditious and ample manner, and by which personal liberty is not left to rest for its security upon general and abstract declaration of right — nor allowed to depend upon the arbitrary discretion of any one man.

It is a writ, for the denial of which judges are made personally responsible, and of the benefits of which no man can rightfully be deprived (2 *Kent's Com. p. 26, et seq. on personal liberty and security;* 1 *Stephens on the Eng. Constitution, p.* 454, *title Habeas Corpus Act;* 2 *N. Y. Rev. Stat.* 563, *et seq. and especially* § 44 [§ 42], *stating the excepted cases into which the court can not inquire*).

In Great Britain, from which we received the *habeas corpus* act without alteration, it is well established that the doctrine of *res judicata* has no application; but that a party restrained of his liberty has a right to the opinion not only of every court, but of every judge, as to the legality of the imprisonment, and that each court and judge, when applied to, are bound to consider and decide the case upon their own examination, without being concluded by previous decisions in the same matter (*Ex parte Partington in the Court of Exchequer* (1845); 13 *Meeson & Welsby,* 679, *per Parke B. and Pollock, C. B. See the same case reported* 2 *Dowling & Lowndes' Practice Reports,* 650, *and* 9 *London Jurist,* 93).

2. It has never been determined in our courts that the doctrine of *res judicata* applies to decisions in writs of *habeas corpus* involving the liberty of the citizen. Such a principle, once established, would destroy the essential value of the writ, as affording " a free, easy, cheap, expeditious and ample " remedy against infringements of personal liberty, and would tend to place the liberty of the citizen at the disposal of *a single judge;* which is the very thing the writ is intended to prevent.

The case of the *People* v. *Mercein* (25 *Wend. R.* 64), which has been relied upon to maintain such a doctrine, involved *no*

In the matter of Da Costa.

*question* of personal liberty, but simply the question whether the custody of an infant child, under a certain state of facts, should be given to the father or to the mother. Various writs having been issued, and the matter having repeatedly occupied the attention of the judges, the court for the correction of errors, after a full examination of the testimony, declared, by special resolution, that *that case* was *res judicata* (see remarks of Cowen, J., *People* v. *Mercein,* 3 *Hill,* 440), but their decision did not extend to any case involving personal liberty: and no general language used by individual judges, in their opinion, can suffice to abridge or lessen the constitutional authority of this writ of right.

A decision tending by an enlarged construction to overthrow or impair a fundamental right, must receive such a construction as shall best preserve the liberties of the people — and the decision in this case on the point of *res judicata,* declared as it was by a special resolution, only recognizes the right of a judge to apply the doctrine of *res judicata* to cases of *habeas corpus* involving *the custody of an infant child.* Had it extended to all other cases of *habeas corpus,* such decision would have been utterly inoperative to abridge the right of a person restrained of his liberty to the full benefit of the writ, according to its ancient character — which includes his right to the opinion of every court and of every judge, upon the legality of his imprisonment — for the reason that the right to this writ is secured, not only by the constitution of this state, but by *the constitution of the United States,* and can not, therefore, be taken away, crippled, or abridged in any degree by the legislation or the adjudications of individual states.

3. In case the doctrine of *res judicata* could apply in its full force to proceedings on *habeas corpus,* involving the liberty of persons, which is utterly denied, this matter, upon the facts shown by the record, is clearly not within the rule, but must be held to be *res integra* and *res intacta,* as wanting in all the essential requisites to constitute it an adjudicated case. Upon the essentials of *res judicata,* &c., see 2 *Kent's Com.* 12 *Co. Lit.* 352, *b.* 303 *a. Bronson, J., in People* v. *Mercein,* 25 *Wend.* 82.

*Same case,* 3 *Hill,* 420; 3 *Cowen and Hill's Phil. on Evidence,* p. 824, *note* 586, *and authorities there cited.*

1. The opinion of Judge Daly annexed to the return of the respondent, is unaccompanied by any judgment, order or decree, and does not therefore constitute a *record* that can be pleaded by way of estoppel. Further evidence on the point, whether or not there was an order ·is inadmissible. We can look only at the return, and that shows the conclusions of Judge Daly's mind, but not his final action as a judge. We have the reasons for the ·act, but the act itself has never been performed. Until the act is performed it can not be on record, and until the record is complete, it can not be an estoppel.

2. The decision of Judge Daly, if his opinion be regarded as such, was not a solemn decision of a court of justice, or of a judge *in the exercise of his rightful jurisdiction,* for the reason that a judge of the Common Pleas, under the new constitution, has no authority to issue a writ of *habeas corpus* — and it was in a proceeding *coram non judice,* for the additional reason that the writ had been formally dismissed by the attorney of record, by whom the same had been issued, the said attorney being clothed also with full authority from the negroes, before any order was made or decision pronounced, or opinion given, and there was, therefore, no proceeding before the judge, nor any conflicting claims to require, or justify his decision of the questions raised by the return.

Upon the right of a plaintiff to discontinue his plaint at his own pleasure, and suffer a *nonsuit,* see 3 *Blackstone's Com.* 376, 7; 1 *Burrill's Prac.* 241; *People* v. *Mayor's Court of Albany,* 1 *Wend.* 36; *Wooster* v. *Burr,* 2 *Wend.* 295.

3. The proceeding before Judge Daly was not between the same parties or privies — but a matter *inter alios acta* — between the relator, John Inverness, and the captain — with which the Africans had nothing to do. It was a proceeding instituted without their privity or consent, and by which they are in no way bound. The relator was to them a stranger, the counsel unknown and unauthorized: ignorant of the language, they had no understanding of the matter.

4. A decision is not *res juaicata*, unless the parties to be affected by it have had an opportunity of being fairly heard, and the decision is made upon due deliberation by the judge These Africans in the former proceeding, were denied a hearing. The order of the court was based upon an admission on the record made without their authority, knowledge or assent — and the truth of which they positively deny.

Upon the point that records are only *prima facie* evidence, and may be disproved, see *Bradshaw* v. *Heath*, 13 *Wend*. 407; *Language of Hosmer*, C. J., quoted in same case; *Idem*. 415, 416, and *Shumway* v. *Stillman*, 6 *Wend*. 447; 2 *Rev. Stat.* 563, *et. seq.* as to the rights of the party to show the facts relative to his imprisonment.

5. The grounds of the decision must be the same actually and necessarily, so that the evidence in the one would support the decision in the other.

In this case, the former decision was based on the admission upon the record, that the Africans were seamen; the present record shows they are not, and can not be, seamen, in the meaning of our law, and it further shows a new imprisonment, manacling, and restraint differing from any that appeared in the first proceeding, and which, of itself, admitting them to have been seamen, was a breach of the contract assumed to exist between them and the captain — and has rendered that compact void, and determined the relationship in which the opinion of Judge Daly declared that they stood.

6. This writ should not be dismissed on the ground that the case is *res judicata*, even did it possess the essentials which it wants, for the reason that it appears by the opinion of Judge Daly, that the Africans were remanded as seamen, although admitted by the captain to be slaves, and it being an established principle that no slave can either make or assent to a contract, and it being the law of this state that all slaves brought within its borders are free, and that servitude under any possible form, pretence, or circumstances, shall not be recognized by our courts, save in the single case of fugitives held to service in the southern states, it would be a violation

of constitutional right, a denial of justice, and an outrage upon personal freedom, were a judge, when appealed to for protection upon *habeas corpus*, to dismiss that writ upon the strength of a decision shown to be erroneous, and remand these Africans to an imprisonment known to be unlawful, to a condition of servitude which the law abhors, and has peremptorily forbidden, and to the power of a master who has threatened them with violence, the instant he escapes from the jurisdiction of a free state.

*Purroy*, for the respondent.

EDWARDS, J. — A writ of *habeas corpus* was issued by his honor, Judge Edmonds, on the 17th day of July last, directed to Clemente Jose Da Costa, master of the Brazilian bark Lew Branca, commanding him to have the bodies of Jose da Costa and Jose da Rocha, by him imprisoned and detained, as was alleged, together with the cause of such imprisonment and detention, before him, the said judge, at a time and place therein specified. The respondent appeared before Judge Edmonds, and made his return to the said writ, under oath; to which the said da Costa and da Rocha put in an answer, also under oath. At this stage of the proceedings, by the consent of the counsel for all the parties, the writ was amended in such a manner as to be returnable before me, and, by a similar consent, I allowed the writ *nunc pro tunc*.

The return of the respondent admits the detention of da Costa and da Rocha, and alleges that before the issuing and service of the said *habeas corpus*, to wit: on the 10th day of July last, a writ of *habeas corpus* was allowed and issued, by the Hon. Charles P. Daly, one of the associate judges of the court of common pleas, in and for the city and county of New-York, and of the degree of counsellor of the supreme court, directed to the said respondent, with the object and for the purpose of producing, before the said judge, the persons named in the said first mentioned writ, for the purpose of inquiring into the cause of their detention or imprisonment by the said

In the matter of Da Costa.

respondent. That, in obedience to the said writ issued by the said Judge Daly, the respondent produced before the said judge, the persons of the two negro men called Jose da Costa and Jose da Rocha. That upon said writ so issued by said Judge Daly, and upon the return thereto, proceedings were duly had before said judge, who after mature deliberation, and after hearing the allegations and arguments of counsel on both sides, decided and adjudged, on or about the 16th day of July last, that the said Jose da Costa and Jose da Rocha were legally under the restraint of the said respondent, and that they should be remanded to his custody; which said decision and judgment of said Judge Daly, it is alleged in the said return, are still in force, unreversed, not set aside, nor made void. The return further states, that in pursuance of said decision and adjudication, the persons of said da Costa and da Rocha were committed to the custody of the respondent. The return also sets forth other matters, to which it is not necessary, in this place, to allude.

. The answer of da Costa and da Rocha, does not deny the substance of any of the allegations above cited from the return of the respondent.

Upon the said return and answer, the respondent contends that there has been an adjudication of the matter by Judge Daly, and that such adjudication is binding upon me, and precludes any investigation into the facts of the case, unless new matters are shown, which have arisen since the adjudication of Judge Daly, and which renders such investigation proper.

Before the enactment of the Revised Statutes, the law seems to have been settled, that the return of the respondent was conclusive, and that none of the facts contained in it could be controverted. (3 *Hill*, 658, *note* 30.) By the revised statutes, the party brought up may deny any of the material facts set forth in the return, or allege any fact to show either that the imprisonment or detention is unlawful, or that he is entitled to his discharge. (2 *R. S.* 471, *p.* 50.)

If, then, any of the material facts set forth in the return, are

not denied by the party brought up, the return, *pro tanto*, has the same effect as before the revised statutes, and those facts must be taken to be true. (3 *Hill*, 658, *note* 28.)

Upon this construction of the law, I am bound to assume that the facts set forth in the return, and not denied in the answer, are true, and that da Costa and da Rocha have heretofore been brought before Judge Daly, upon a writ of *habeas corpus*, and that, after an investigation into the causes of their detention by the respondent, Judge Daly adjudged that they were legally under the restraint of the respondent, and that they should be awarded to his custody; and that said judgment now remains in full force.

It thus appears that there has been an adjudication, upon a writ of *habeas corpus:* that da Costa and da Rocha were at the time of the said adjudication, under the legal restraint of the respondent.

The next question is, does the principle of *res adjudicata* apply to this case, and am I precluded by the above mentioned adjudication from any further inquiry into the subject ? In the case of *Mercein* v. *The People ex rel. Barry*, (25 *Wend.* 64) it was decided by the court of errors of this state, that the principle of *res adjudicata* was applicable to a proceeding under *habeas corpus*. Two opinions only were delivered; one by the chancellor and the other by Senator Paige. The question under review had been decided by Judge Inglis, then a judge of the court of common pleas, upon a writ of *habeas corpus* issued by him. The chancellor, in delivering his opinion, said that " he concurred in the decision of Judge Inglis, that the principle of *res adjudicata* was applicable to a proceeding upon *habeas corpus;* and that it could make no difference in the application of the principle, whether the first writ was returnable before a court of record, or a judge or commissioner out of court, for, in neither case, ought the party suing out the writ, to be permitted to proceed *ad infinitum* before the same court or officer, or before another court or officer, having concurrent jurisdiction, to review the former decision, while the facts

remain the same; but if dissatisfied with the first decision, should appeal to a higher tribunal.

Senator Paige says, that " if a final adjudication upon a *habeas corpus* is not to be deemed *res adjudicata*, the consequences will be lamentable. This favored writ will become an engine of oppression, instead of a writ of liberty." He further says, " I think that the following rule will be found sustained by the cases, viz. : Whenever a final adjudication of an inferior court of record, or of an inferior court not of record, or of persons invested with power to decide on the property and rights of the citizens, is examinable by the supreme court, upon a writ of error, on a *certiorari*, in every such case, such final adjudication may be pleaded as *res adjudicata*, and is conclusive upon the parties in all future controversies relating to the same matter." And, finally, a resolution was adopted by the court. " That in the opinion of the court, the decision of Judge Inglis upon the question of *res adjudicata* was correct, and in conformity to the law." This decision fully and clearly establishes the rule that the principle of *res adjudicata* is applicable to proceedings upon *habeas corpus*.

The only question, then, that remains upon this branch of the case is, whether the same subject matter between the same parties, has been adjudged by an officer having power to issue and decide upon a writ of *habeas corpus*.

First. Is the subject matter the same ?

The subject matter under the first writ, was the imprisonment and detention of da Costa and da Rocha, and the adjudication of the judge was, that they were " legally under the restraint of the respondent, and should be remanded to his custody." The subject matter of the present writ, is the detention of the same persons by the respondent; and I am called upon to decide what was decided by Judge Daly, viz: Whether they are legally under the restraint of the respondent ?

Second. Are the parties the same?

The proceedings, in both cases, have been in behalf of the

same persons, against the same respondent.  The fact that the relators are different, does not alter the case.

Third.   Had Judge Daly the power to issue the writ and to decide the questions arising under it ?

By the law, as it stood under the old constitution, it is not questioned that he had the power.   By the new law, it is enacted that the "judges of the court of common pleas for the city and county of New-York, shall have and possess the same powers, and perform the same duties as the first judge and assistant judges of the said court of common pleas now have and possess and perform." (*Laws of* 1847, *p.* 281, *s.* 7).

There are several matters alleged in the answer of da Costa and da Rocha, for the purpose of showing that there was irregularity in the proceedings before Judge Daly.   The answer to all these allegations is, that I am bound by the adjudication, and can not look behind it.   If there has been irregularity, I have no power to decide upon that question, in this collateral proceeding.   The remedy must be in a court sitting as a court of review.

But it is contended that new facts have arisen in this case since the decision of Judge Daly.   The answer of da Costa and da Rocha, sets forth that since the said adjudication, and on the 17th July last, they were hand-cuffed and put in a store-room, in the forward cabin of the vessel, and there confined, and that the respondent also threatened them with violence when he " got them at sea."   These are not new facts of such a character as to change the relations of the parties.   If there has been an abuse of the right which it has been adjudged that the respondent had to the custody of the persons held in restraint by him, the remedy is not by *habeas corpus;* much less so as to any threatened violence.

With these views, I am of opinion that the question presented to me under the present writ of *habeas corpus,* is *res adjudicata,* and that I am precluded from going into any investigations of the facts in the case; and that no new facts are set forth in the proceedings which authorize any interfer-

In the matter of Da Costa.

ence by me.   The writ must, therefore, be dismissed, and Jose da Costa and Jose da Rocha remanded to the custody of the respondent.

NOTE.—The following is the decision of Judge DALY, referred to in the preceding case:—

DALY, J.—This is an application upon a writ of *habeas corpus* to discharge Jose da Costa, Jose da Rocha, and Maria da Costa, alleged by the relator, John Inverness, to be restrained of their liberty by Clemento Jose da Costa, master of the Brazilian barque Llembranca.

It is set forth in the return of the master, that the persons above named were brought from Rio de Janeiro to the port of New York, in the barque aforesaid.

That the two first named, Jose da Costa and Jose da Rocha, were shipped on board the Llembranca at Rio de Janeiro as part of the crew, and as such he is required to take them back by the laws of Brazil.   That the woman Maria has come upon the voyage to this port as a servant and nurse to his wife and family, in whose service she now is.   It is further set forth in the return, that Jose da Costa and the woman Maria, are slaves, lawfully acquired by the respondent, according to the laws of Brazil, by which laws, slavery is permitted and the acquisition, possession, and transfer of persons as property, allowed, recognized and protected.

That Jose da Rocha is also a slave, and the property lawfully acquired is as aforesaid, of Antonio Jose da Rocha  Peresira, of Rio de Janerio, part  owner of the barque, and by him committed to the custody of the respondent.

These facts are admitted by the relator, but he denies that they are sufficient to justify the detention of the parties concerned.

The fact that Jose  da Costa and Jose da Rocha  constitute part of the crew of the Llembranca, is an answer to the application for their discharge.   By § 31st, of the existing treaty between the United States and Brazil, provision is made for the arrest, detention, and custody of persons  composing a part of the crew of any public or private vessel of either nation, who shall desert.

The consuls of the respective nations are authorized to apply to the proper judicial authorities, and upon proving by the exhibition of the ship's roll, register or other document, that the persons claimed were part of the crew, they are required to be delivered up.   They are to be put at the disposal of the consul,  and may, at his request,  be placed in any public prison  until  sent to the vessels to which they belong, or to others of the same nation.   The treaties made under the authority of the United States, are declared by the 6th Article of the Constitution to be the supreme law of the land,  to be binding upon the judges of every state, any thing in the constitution or laws of any state to the contrary notwithstanding.

I am bound, therefore, to regard and carry out the provisions of this treaty. And it would be a palpable violation of its obvious meaning and intent, to discharge persons upon a writ of *habeas corpus*, admitted to be part of the crew

In the matter of Da Costa.

of a Brazilian vessel. If the two persons should desert, they could be re-claimed as a part of the crew. It would be the duty of the judicial tribunals of this state, in such a case, upon the proper application, to deliver them up.

The right of the master to detain them as a part of his crew, is necessarily implied When a duty is imposed to deliver them to him, should they desert from his service, he undoubtedly has a right to detain them as a part of his crew, if he has a right to reclaim them when they leave his vessel.

That they are slaves does not alter or vary the case, for were I to hold that they are free persons. according to the laws of this state, the master would still be entitled to retain them as members of his crew.

They must, therefore, be returned on board the vessel from whence they were brought in obedience to this writ.

It will not be necessary to determine the principal question argued upon the return, to wit:—Whether slaves voluntarily brought into this state, are to be regarded as property within the meaning of that section of the treaty by which the United States has stipulated specially to protect the property of subjects of Brazil.

The point is not material to the matter now before me. Da Rocha and da Costa are left in the custody of the respondent, not upon the ground that they are his property, but because they compose a portion of his crew.

The question could only be material as far as respects the right of the re-spondent to detain the woman Maria. But she, by her own declaration, is under no restraint. The writ has been sued out without her knowledge, privity or consent. She has expressly declared her unwillingness to leave the service of the respondent, and expressed her desire to return with him to Rio de Janeiro.

As she is on board the respondent's vessel of her free will, she can not be regarded as under restraint. The interposition of this writ, therefore, in her behalf, is not called for. She has elected to remain where she now is, and there is no room to make any order respecting her.